**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BLUEFIELD**

**TYLER DWAYNE NEW,**

     **Plaintiff,**

**v.**                                                                   **CIVIL ACTION NO. 1:24-00212**

**METROPOLITAN LIFE**
**INSURANCE COMPANY,**

     **Defendant.**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Tyler Dwayne New, by and through the undersigned counsel, pursuant to *Federal Rule of Civil Procedure 56* and *Local Rule 7.1* and for his *Memorandum in Support of Plaintiff's Motion for Summary Judgment,* states as follows:

**STATMENT OF PROCEEDINGS AND ALLEGED FACTS**

Plaintiff Tyler Dwayne New ("Plaintiff") filed the initial *Complaint* in the Circuit Court of Mercer County, West Virginia naming as Defendants Metropolitan Life Insurance Company ("MetLife"), Cleveland-Cliffs Princeton Coal, Inc. ("Cleveland-Cliffs"), Twin State Mining, Inc. ("Twin State"), and XMV, Inc. ("XMV") as Defendants. [ECF 1-2]. Plaintiff sought Declaratory Judgment seeking a declaration of the rights, status, and other legal relations as to an insurance policy issued by MetLife. *Id*. at ¶ 22. Plaintiff also asserted various state law claims. *Id*. at ¶¶ 29-108.

Defendants filed a *Notice of Removal* [ECF 1] on April 24, 2024 and a *Motion to Dismiss* [ECF 5] ("*May Motion*") on May 1, 2024, asserting that Plaintiff's claims were preempted by the

*Employee Retirement Income Security Act of 1974*, 29 U.S.C. § 1001 et seq. ("ERISA") [ECF 5] and a *Memorandum in Support* [ECF 6] (*"May Memorandum"*). On October 1, 2024, this Court issued a *Memorandum Opinion and Order* [ECF 19] ("*Order*") wherein Plaintiff was "**ORDERED** to file an amended complaint within 14 days of this Order removing his state law claims and asserting a claim for ERISA benefits." *Order* [ECF 19] at pp. 1-2. Plaintiff timely filed his *First Amended Complaint* [ECF 22] ("*FAC*") on October 15, 2024.

MetLife filed another *Motion to Dismiss Plaintiff's First Amended Complaint* [ECF 23] ("*Motion*") on October 28, 2024 along with a *Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint* [ECF 24] ("*Memorandum*") pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. Plaintiff filed *Plaintiff's Response in Opposition to Motion to Dismiss Plaintiff's Complaint* [ECF 25] on November 11, 2024. The *Motion* remains pending.

On January 10, 2025, Plaintiff filed *Plaintiff's Motion to Conduct Discovery* [ECF 28] and *Plaintiff's Memorandum in Support of Motion to Conduct Discovery* [ECF 29]. Defendant filed *Defendant's Response to Plaintiff's Motion to Conduct Discovery* [ECF 30]. Plaintiff did not file a Reply. That *Motion* is also pending.

Plaintiff is submitting this *Motion for Summary Judgment* pursuant to this Court's *Order* [ECF27] of December 11, 2024.

## STATEMENT OF FACTS

MetLife is an insurance company which is in the business of issuing insurance policies to West Virginia residents and insuring individuals with life insurance and accidental death and dismemberment insurance which forms the basis of this action. (Administrative Record ("Record") [ECF 13] at NEW-00081.

Troy Dwayne New ("Troy New"), father of Plaintiff, was employed by Cleveland-Cliffs Princeton Coal, Inc. ("Cleveland Cliffs") as a continuous miner operator. *Id.* at NEW-00014-15. While working for his employer, Troy New sustained an injury when a large piece of mine roof fell on him and he was he was off from work beginning on April 2, 2022. *Id.* at NEW-00015. He was still considered an active employee by his employer at the time of his death. *Id.* As a result of his work-related injury, Troy New received consecutive Temporary Total Disability Workers' Compensation benefits with leave and Family Medical Act leave. *Id.* at NEW-00027. Family Medical Act leave is for 12 weeks. *Id.* On Sunday, June 18, 2023, Troy New was involved in an ATV accident, which caused severe and life-threatening injuries to which he succumbed on Thursday, June 29, 2023. *Id.* at NEW-00022.

Plaintiff contends at the time of his death, Troy New was insured under a Term Life & Accidental Death and Dismemberment Insurance Policy [hereinafter "The Policy"], Group Policy No. 0215079, issued by MetLife. *Id.* at NEW-00078-154. Plaintiff Tyler New is the designated primary beneficiary. *Id.* at NEW-00023-26.

From the time that Troy New was off from work due to his injuries until his death, Cleveland-Cliff continued to pay the premiums for The Policy. *Id.* at NEW-00015. Cleveland-Cliffs completed a Life Insurance Claim Form/Employer Benefit Administrator Statement for Basic Life and AD&D benefits under the policy after Troy New's death. *Id.* at NEW-0012-17. Plaintiff filed a claim with MetLife for benefits due and owing to him under The Policy. *Id.* at NEW-00018-21.

On September 8, 2023, Defendant MetLife denied Plaintiff's claim for benefits stating that Troy New's last day of active work was April 2, 2022 and coverage only continued for six months after that date. *Id.* at NEW-0003637. Cleveland-Cliffs still considered Troy New an active

employee on a leave of absence at the time of his death. *Id*. at NEW-00015. Cleveland-Cliffs continued to pay the premiums for The Policy as West Virginia Law does not permit an employer to terminate an employee's benefits while they are off from work and receiving Temporary Total Disability under the Workers Compensation statues. *Id*. at NEW-00063-64.

By letter dated November 7, 2023, Defendant MetLife denied the appeal of Tyler New on the basis that The Policy does not allow coverage to continue while an employee is not actively at work due to injury or sickness for a period greater than six months. *Id*. at NEW-00068-70.

Under the plan, Troy New had the option of converting the The Policy into an individual policy of life insurance without evidence of his insurability, but never received written notice of the option to convert to an individual policy as required by The Policy. *Id*. at NEW-000128. *West Virginia Code Section 33-14-20* also required that Troy New be given written notice of the option to convert a group policy to an individual policy at least fifteen days prior to the expiration date of the period permitted for conversion such period. Failure to give the required notice results in an additional period within which an individual can exercise the right to conversion.

Failure to provide notice of the right to convert the group policy into an individual policy resulted in Troy New failing to have a life insurance policy in effect at the time of his death for the benefit of Plaintiff Tyler New since Troy New was prevented from converting The Policy. Plaintiff seeks the benefits due to him that were wrongfully denied under The Policy.

**ARGUMENT**

### I. Legal Standards

A grant of summary judgment requires that "there is no genuine issue as to any material fact." *Fed. R. Civ. P. 56*. "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for

4

the nonmoving party'" *The News & Observer Publ. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citation omitted). The existence of factual issues that "may be resolved in favor of either party" precludes a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In deciding a motion for summary judgment, a court must view the evidence "'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S. Ct. 1861, 1866 (2014) (quoting, *Adickes* v. *S. H. Kress & Co.*, 398 U. S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). "[A]ll justifiable inferences are to be drawn in that party's favor." *News & Observer Publ'g Co.* at 576, (quoting, *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999) (internal quotations omitted)).

A review of a decision of an Administrator or fiduciary is subject to an abuse of discretion standard where the plan confers discretionary authority to determine benefit eligibility or to interpret plan terms. *Akers v. Minn. Life Ins. Co.*, Civil Action No. 2:12-cv-0667, 2014 U.S. Dist. LEXIS 44665 (S.D. W. Va. Mar. 31, 2014) (citing, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 629-30 (4th Cir. 2010). Determination of whether an abuse of discretion occurred generally involves only a review of the administrative record; however, evidence outside of the record may be considered to the extent necessary to determine the existence of a conflict of interest. *Hooper v. UnitedHealthcare Ins. Co.*, 694 F. App'x 902, 908 (4th Cir. 2017) (citations omitted). The relevant factors to be considered in determining the existence of a conflict of interest include, but are not limited to,:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy
> of the materials considered to make the decision and the degree to which they
> support it; (4) whether the fiduciary's interpretation was consistent with other
> provisions in the plan and with earlier interpretations of the plan; (5) whether the

decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Akers* at * 21 (citing, *Booth*, 201 F.3d at 342-43; *Johannssen v. District No. 1-Pacific Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 176 (4th Cir. 2002); see also Lockhart v. UMWA 1974 Pension Trust, 5 F.3d 74, 77 (4th Cir. 1993).

## II.   MetLife was Required to Provide Notice of the Right of Conversion

The Policy provided by MetLife terminates life insurance and accidental death and dismemberment insurance six months after the date the employee was actively at work. The Policy provides for conversion to an individual policy during the Application Period as follows:

**Application Period**

If You opt to convert Your life insurance for any of the reasons stated above, We must receive a completed conversion application form from You within the Application Period described below.

If You are given Written notice of the option to convert within 15 days before or after the date Your life insurance ends or is reduced, the Application Period begins on the date that such life insurance ends or is reduced and expires 31 days after such date.

If You are given Written notice of the option to convert more than 15 days after the date Your life insurance ends or is reduced, the Application Period begins on the date such life insurance ends or is reduced and expires 15 days from the date of such notice. In no event will the Application Period exceed 91 days from the date Your life insurance ends or is reduced.

Record at NEW-000128.

"[W]here a plan specifically requires that a written notice of the right to convert be provided, the plan administrator is required to issue such written notice." *Canada Life Assur. Co. v. Estate of Lebowitz*, 185 F.3d 231, 235–36 (4th Cir. 1999)). MetLife then contends that these provisions do not require that written notice be given. However, these provisions can be interpreted to require that written notice be given.

6

The time period for proving the written application is dependent upon when the notice is given. If written notice is given within 15 before or after the insurance ends, the application period is 31 days; however, if the notice is given more than 15 days after the insurance ends, then an additional fifteen days from date of the notice is provided; thus, the period for conversion is variable for each employee in this instance. Record at NEW-000128.

Furthermore, this provision is ambiguous when read in conjunction with the provision that the conversion period is no longer than 91 days. *Di*van employee may receive written notice 90 days after the termination of the insurance advising the employee that the policy can be converted within 15 days, but, applying the "shall not exceed" language means only one day is available to convert the policy. *Id*.

The language in The Policy is confusing and ambiguous. Even though the language requires written notice, variable time limits exist within which a conversion may occur. In the case *sub judice*, MetLife failed to send any notice whatsoever advising Troy New of his right to convert The Policy. Moreover, the Summary Plan Description contains no information advising an employee of the right of conversion. The Application Period provisions, rather than being straightforward provisions that clearly inform employees of the right of conversion, are ambiguous. Employees are advised that their Application Period is dependent upon when MetLife gives written notice, then advised that MetLife is not required to give written notice.

Determining the applicable Application Period based upon written notice can be interpreted as requiring that written notice be given. Otherwise, the language regarding written notice would be superfluous. "Basic principles of contract interpretation instruct us to look first to the plain meaning of the contract's terms, and also to give meaning to each word used and avoid constructions that render language meaningless, superfluous, or contradictory." *Rota-McLarty v.*

*Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4th Cir. 2012) (citation omitted). "The interpretation of the Policy is guided by federal common law, which is informed by ordinary principles of contract law and state common law." *O'Dell v. Zurich Am. Ins. Co.*, Civil Action No. 2:13-12894, 2015 U.S. Dist. LEXIS 130831, at *25 (S.D. W. Va. Sep. 29, 2015) (citing, *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013)). "Ambiguous terms of an ERISA policy are construed against the drafter in accordance with the reasonable expectations of the insured." *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 235 (4th Cir. 1999) (citing, *Jenkins v. Montgomery Indus., Inc.*, 77 F.3d 740, 743 (4th Cir. 1996)); See also, *Bailey v. Blue Cross & Blue Shield*, 67 F.3d 53, 58 (4th Cir. 1995) (citations omitted).

The ambiguity of the language is illustrated by a previous decision cited by MetLife. See, *Watson v. Dell Techs.*, Civil Action No. 19-cv-02667-RM-NYW, 2020 U.S. Dist. LEXIS 214456, *2-*3 (D. Colo. May 29, 2020). The decision in *Watson* demonstrates that the language of The Policy is ambiguous. The employee in *Watson* voluntarily separated from his employer and received benefits, including life insurance, until November 24, 2016. *Id.* at *2-*3. The employee passed away approximately ten months after November 24, 2016 and his surviving spouse sought life insurance benefits. *Id*. at *5. The surviving spouse argued that she was entitled to the benefits as no written notice of the right of conversion was sent. *Id*. at *9.

After reviewing the same policy language at issue *inter alia*, the *Watson* Court concluded "Mr. Watson had to convert his group life insurance policy to an individual life insurance policy within 31 days of November 24, 2016." *Id*. at *4. However, MetLife Policy in *Watson* provided that the 31-day Application Period applies only if written notice is given within 15 days before or after the insurance ends. No written notice was provided. The policy did not state that the Application Period is 31 days after the end of the policy. The *Watson* Court provides no basis in

the opinion for concluding that the 31 days was the correct period in the absence of written notice. Therefore, the Colorado District Court Magistrate Judge demonstrated the ambiguity of the provisions in the recommendation as the Magistrate Judge had to supply a term for the policy.

"Ambiguous terms of an ERISA policy are construed against the drafter in accordance with the reasonable expectations of the insured." *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 235 (4th Cir. 1999) (citing, *Jenkins v. Montgomery Indus., Inc.*, 77 F.3d 740, 743 (4th Cir. 1996)); See also, *Bailey v. Blue Cross & Blue Shield*, 67 F.3d 53, 58 (4th Cir. 1995) (citations omitted). The reasonable expectation of the insured would be that written notice regarding an important employee benefit would be provided to the insured, especially if the insured is no longer physically working. *Canada Life Assurance Co.*, 185 F.3d at 235.

Moreover, Plaintiff's claims would have been insurance contract claims prior to ERISA. The application of ERISA, in effect, cuts off Plaintiff's legal rights to pursue his claims through the traditional judicial process. ERISA relegates the decision-making process to the administrative level with very little oversight.

Finally, this case presents a conflict of interest between Defendant Met Life on the one side and Plaintiff and the Employer/Plan Administrator, Cleveland-Cliffs Princeton Coal, Inc. on the other side. The Administrative Record demonstrates that the employer continued to pay premiums to Defendant MetLife as the Employer believed it could not stop providing life insurance coverage while Troy New was absent from work due to his Workers' Compensation claim, under West Virginia Worker's Compensation Law, W.Va. Code §23-1-1, *et seq*. Record at *Id*. at NEW-00015 & 63-64.

MetLife relies upon The Policy language that grants discretionary authority to the plan administrator and other fiduciaries. That provision of The Policy provides:

9

**Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**

In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

Record at NEW-000152.

An employee of the Plan Administrator submitted an application for benefits under The Policy and intended that Troy New be treated as an Active Employee entitled to benefits. *Id*. at NEW-0012-17. The Plan Administrator therefore interpreted the provisions of The Policy to provide for a continuation of benefits for Troy New. This interpretation should be conclusive as to Plaintiff's entitlement to the benefits he seeks as it is the employer who develops the Plan. MetLife only provides an insurance policy that is required to implement the intent of the Plan, not serve MetLife's own interests. Cleveland-Cliffs Princeton Coal as Plan Administrator/Plan Fiduciary, interpreted, pursuant to their discretion under the Plan, Troy New's entitlement to Plan benefits and Defendant MetLife cannot now act as if Cleveland-Cliffs Princeton Coal could not.

Defendant MetLife, however, denied Plaintiff's claim for the policy contending that the time for continuation of coverage had expired, notwithstanding Plaintiff's decedents receipt of workers compensation benefits. The ambiguity in the language regarding the right to convert and the absence of any information regarding the right to convert in the SPD results in the high probability that employees will not convert their policies. Moreover, this language gives MetLife ample opportunities to deny the coverage because MetLife can "interpret" the language to its benefit. Thus, the objectives of the Employer/Plan Administrator to continue coverage and Troy New to continue to have coverage paid by the Employer conflict with Defendant MetLife's objective to cease coverage unless the employee converted to an individual plan or prevent the

10

purchase of individual plans completely. Further, once Defendant took upon itself the obligation to provide notice, Defendant should not be able to escape its responsibility by "interpreting" The Policy not to require notice, or any other manners which deny appropriate coverage.

**CONCLUSION**

For the foregoing reasons, Plaintiff Tyler Dwayne New respectfully requests that this Court **GRANT** *Plaintiff's Motion for Summary Judgment*, or, in the alternative **GRANT the** *Plaintiff's Motion to Conduct Discovery*.

**TYLER DWAYNE NEW,**
**By Counsel,**

 */s/ Stephen P. New*
Stephen P. New (WVSB #7756)
Chrisopher B. Frost (WVSB #9411)
Stephen New & Associates
430 Harper Park Drive
Beckley, WV 25801
T: (304) 250-6017
F: (304) 250-6012
steve@newlawoffice.com
cfrost@newlawoffice.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BLUEFIELD**

**TYLER DWAYNE NEW,**

      **Plaintiff,**

**v.**                                **CIVIL ACTION NO. 1:24-00212**

**METROPOLITAN LIFE**
**INSURANCE COMPANY,**

      **Defendant.**

## CERTIFICATE OF SERVICE

Undersigned counsel for Plaintiff hereby certifies that the foregoing *Plaintiff's Memorandum in Support of Motion for Summary Judgment* was served upon the following via the Court's CM/ECF system this 11ᵗʰ day of February, 2025.

Matthew O. Gatewood, Esq.
GATEWOOD PLLC
1455 Pennsylvania Avenue NW, Ste. 400
Washington, DC 20004

                                /s/ *Stephen P. New*
                                Stephen P. New (WVSB #7756)