IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

TYLER DWAYNE NEW,

      Plaintiff,

v.                                    CIVIL ACTION NO. 1:24-00212

METROPOLITAN LIFE
INSURANCE COMPANY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the parties' cross-motions for summary judgment.  ECF Nos. 31, 33.  For the reasons explained below, plaintiff Tyler Dwayne New's motion for summary judgment (ECF No. 31) is **DENIED**, and defendant Metropolitan Life Insurance Company's ("MetLife") motion for summary judgment (ECF No. 33) is **GRANTED**.

### I.   Background

This case arises from a coverage dispute regarding a group life insurance policy that New claims to have been in effect at the time of his father's death and from which New stands to benefit.  See Am. Compl., ECF No. 22 at ¶¶ 12-14.

Before his death, New's father, Troy New, worked at Cleveland-Cliffs Princeton Coal, Inc. ("Cleveland-Cliffs") as a continuous miner operator.  See id. at ¶ 8.  On April 1, 2022, Troy New suffered a work-place injury, causing him to receive

temporary-total-disability-workers'-compensation benefits and leave from employment.  See id. at ¶ 11.  While on leave and receiving the workers' compensation benefits for more than one year, he died in an ATV accident on June 29, 2023.  See id.

Cleveland-Cliffs provided a group Basic Life and Accidental Death and Dismemberment insurance policy through MetLife to all full-time employees, including Troy New.  See Ins. Pol'y, ECF No. 23-1.  Cleveland-Cliffs was the designated plan administrator for the insurance policy.  See id.

The policy states that it applies to all full-time employees until the last day of the month in which their employment ends.  See id. at 40.  The policy explains that employment ends when the employee ceases to be "Actively at Work," (id.), which the policy defines as "performing all of the usual and customary duties of Your job on a Full-Time basis[,]" (id. at 36).  The policy defines "Full Time" as "Active Work of at least 30 hours per week on the Policyholder's regular work schedule . . . ."  Id.

If a covered employee is injured or on any other leave of absence, the policy allows coverage to continue for up to six months beyond the last day of the month in which the employee is Actively at Work, if the employer continues to pay premiums for the employee:

**AT THE POLICYHOLDER'S OPTION**

[Coverage continues if] [t]he Policyholder
has elected to continue insurance by paying
premiums for employees who cease Active Work
in an eligible class for any of the reasons
specified below.

1. for the period You cease Active Work in
   an eligible class due to injury or
   sickness, up to 6 months;

2. if You cease Active Work due to layoff,
   for a period in accordance with the
   Policyholder's general practice for an
   employee in Your job class;

3. for the period You cease Active Work in
   an eligible class due to any other
   Policyholder approved leave of absence,
   up to 6 months.

The Policyholder's general practice for
employees in a job class determines which
employees with the above types of absences
are to be considered as still insured and
for how long among persons in like
situations.

Id. at 46.  The policy explains that, following this six-month

continuation, "if You do not resume Active Work in an eligible

class at this time, Your employment will be considered to end

and Your insurance will end . . . ."  Id.

However, under the policy, when an employee's group

coverage ends, the employee may convert the group policy into an

individual policy by submitting a completed conversion

application within the defined "Application Period."  See Ins.

Pol'y, ECF No. 23-1 at 52.  The Application Period turns on when

3

the covered employee receives written notice of the right to
convert the group policy into an individual policy:

> **Application Period**
>
> If You opt to convert Your life insurance
> for any of the reasons stated above, We must
> receive a completed conversion application
> form from You within the Application Period
> described below.
>
> If You are given Written notice of the
> option to convert within 15 days before or
> after the date Your life insurance ends or
> is reduced, the Application Period begins on
> the date that such life insurance ends or is
> reduced and expires 31 days after such date.
>
> If You are given Written notice of the
> option to convert more than 15 days after
> the date Your life insurance ends or is
> reduced, the Application Period begins on
> the date such life insurance ends or is
> reduced and expires 15 days from the date of
> such notice.  In no event will the
> Application Period exceed 91 days from the
> date Your life insurance ends or is reduced.

Id.

The policy deems Cleveland-Cliffs the fiduciary in charge
of administering the plan.  See id. at 73.  The policy grants
Cleveland-Cliffs and "other Plan fiduciaries" discretion to
interpret the terms of the plan when exercising their respective
responsibilities:

> **Discretionary Authority of Plan
> Administrator and Other Plan Fiduciaries**
>
> In carrying out their respective
> responsibilities under the Plan, the Plan
> Administrator and other Plan fiduciaries

4

> shall have discretionary authority to
> interpret the terms of the Plan and to
> determine eligibility for and entitlement to
> Plan benefits in accordance with the terms
> of the Plan. Any interpretation or
> determination made pursuant to such
> discretionary authority shall be given full
> force and effect, unless it can be shown
> that the interpretation or determination was
> arbitrary and capricious.

Id. at 76.  The responsibility to review claims rested with MetLife:  "After MetLife receives a claim for Benefits, MetLife will review the claim and notify the claimant of its decision to approve or deny the claim."  Id. at 74.

It is undisputed that Troy New never received written notice of his right to convert the group plan into an individual one, (see Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 32 at 4; Def.'s Mem. Supp. Mot. Summ. J., ECF No. 34 at 2), and Cleveland-Cliffs continued to pay premiums for his coverage until his death, (see Administrative R., ECF No. 13-1 at 15, 64).

Cleveland-Cliffs filed the initial claim for benefits upon Troy New's death and advocated for coverage, telling MetLife's claims examiners that Cleveland-Cliffs considered Troy New an active employee at the time of his death, despite him being on leave for his workplace injuries.  See id. at 12-17, 44, 64. Cleveland-Cliffs also explained its belief that West Virginia law prohibited it from cancelling Troy New's life insurance

5

benefits while he received temporary-total-disability-workers'-compensation benefits.  See id. at 64, 71.

Even so, MetLife denied coverage, explaining that "Troy New's last day of active work was April 2, 2022[,] and coverage only continued for six months after that date."  Id.  New administratively appealed the decision, and MetLife affirmed it, explaining that "[t]he Policy does not allow coverage to continue while an employee is not actively at work due to injury or sickness for a period greater than six months."  Id. at 4. This lawsuit followed.

New brings a one-count complaint against MetLife alleging that that "MetLife wrongfully denied and continues to wrongfully deny to the Plaintiff Tyler New the benefits due and owing under The Policy[,]" in violation of Section 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  See Am. Compl., ECF No. 22 at ¶¶ 1,30.

New argues, in support of his motion for summary judgment, that "[f]ailure to provide notice of the right to convert the group policy into an individual policy resulted in Troy New failing to have a life insurance policy in effect at the time of his death for the benefit of Plaintiff Tyler New since Troy New was prevented from converting The Policy."  Pl.'s Mem. Supp. Mot. Summ. J, ECF No. 32 at 4.  New also argues that coverage never lapsed in the first place.

MetLife, on the other hand, argues that New's claim regarding his father's entitlement to written notice of his right to convert the policy should be brought as a breach of fiduciary duty claim, not as a denial of benefits claim.  See Mem. Supp. Summ. J., ECF No. 34 at 5 n.4.  Alternatively, regarding the purported notice requirement, MetLife argues that the policy does not require written notice of the right to convert the group policy.  See id. at 8.  MetLife points to the final sentence of the policy's Application Period for converting the group policy into an individual one, which says, "[i]n no event will the Application Period exceed 91 days from the date Your life insurance ends or is reduced."  Id. (quoting Ins. Pol'y, ECF No. 23-1 at 52).

Regarding New's argument that coverage did not lapse, MetLife argues that under the plain language of the policy, coverage lapsed, and the court must defer to MetLife's policy interpretation because it was reasonable.  See Def.'s Resp., ECF No. 35 at. 2.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party that moves for summary judgment bears the initial burden of demonstrating that no genuine issue of

7

material fact exists.  See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986).  "A fact is 'material' if proof of its
existence or non-existence would affect disposition of the case
under applicable law.  An issue of material fact is 'genuine' if
the evidence offered is such that a reasonable jury might return
a verdict for the non-movant."  Sedar v. Reston Town Ctr. Prop.,
LLC, 988 F.3d 756, 761 (4th Cir. 2021) (quoting Wai Man Tom v.
Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)).

Once the moving party establishes this initial burden, "the
nonmoving party must then go beyond the pleadings and affidavits
and show that there are 'specific facts showing that there is a
genuine issue for trial.'"  Shaw v. Foreman, 59 F.4th 121, 129
(4th Cir. 2023) (quoting Celotex, 477 U.S. at 324).  To show a
genuine issue for trial, the nonmoving party must present more
than "[t]he mere existence of a scintilla of evidence[.]"  Id.
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252
(1986)).  This means "conclusory allegations or denials, without
more, are insufficient to preclude granting [a] summary judgment
motion."  Id. (quoting Wai Man Tom, 980 F.3d at 1037).

Section 502(a)(1)(B) of ERISA permits a participant of an
insurance plan to bring an action "to recover benefits due to
him under the terms of his plan, to enforce his rights under the
terms of the plan, or to clarify his rights to future benefits
under the plan."  29 U.S.C. § 1132(a)(1)(B).  If an insurer

denies benefits to a participant, and that participant sues under Section 502(a)(1)(B), courts will generally apply a de novo standard of review to the claims decision.  See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, "[w]hen a plan by its terms confers discretion on the administrator to interpret its provisions and the administrator acts reasonably within the scope of that discretion, courts defer to the administrator's interpretation."  DuPerry v. Life Ins. Co. of Am., 632 F.3d 860, 869 (4th Cir. 2011) (quoting Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 176 (4th Cir. 2005)).

Because ERISA embodies principles of trust law, where an ERISA plan vests discretionary authority for determinations of benefits in a fiduciary, courts will review such determinations for abuse of discretion.  See Firestone, 489 U.S. at 111.  Under this standard, courts will uphold discretionary determinations by an ERISA plan fiduciary that are reasonable.  See Smith v. Cont'l Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004) (citing Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 341 (4th Cir. 2000)).  A plan administrator's decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  DuPerry, at 869 (quoting Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995)).

9

### III. Discussion

The court will address the threshold question of whether coverage lapsed under the terms of the insurance policy before addressing New's argument that MetLife was required to send Troy New written notice of his right to convert the group policy into an individual policy.

### A.

New asserts three arguments as to why he believes coverage did not lapse:  (1) the policy requires MetLife to defer to Cleveland-Cliffs's approval of New's claim, (2) the policy is ambiguous as to whether coverage can be extended beyond six months while an employee is on leave, and (3) West Virginia law prohibited the cancellation of coverage while Troy New was on leave receiving workers' compensation benefits.

### 1.

New argues that because Cleveland-Cliffs, the plan administrator, interpreted the policy as providing coverage, MetLife was required to defer to that decision under the "Discretionary Authority of Plan Administrator and Other Plan Fiduciaries" section of the policy.  Pl.'s Mem. Supp. Mot. Summ. J, ECF No. 32 at 10.  The court rejects this argument.

As noted above, that section of the policy grants discretionary authority to plan fiduciaries when carrying out their "respective responsibilities."  Id.  Those decisions are

to be given full force and effect unless arbitrary or capricious.  See id.

It was not Cleveland-Cliff's responsibility to approve or deny insurance claims.  The policy expressly delegates that responsibility to MetLife:  "After MetLife receives a claim for Benefits, MetLife will review the claim and notify the claimant of its decision to approve or deny the claim."  Ins. Pol'y, ECF No. 23-1 at 74.  Therefore, MetLife was not required to defer to Cleveland-Cliff's opinion that New's claim should be approved.

"[A] party is a fiduciary under ERISA only as to the activities which bring the person within the definition."  Moon v. BWX Tech. Inc., 577 Fed. App'x 224, 231 (quoting Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992)).  Thus, a plan administrator lacks discretionary authority over responsibilities expressly reserved to the insurer under the policy.  See Moon v. BWX Tech. Inc., 577 F. App'x at 232 ("[I]t could not be more clear that if the MetLife Plan itself confers discretionary authority on a particular entity, that entity is MetLife—not [the alleged plan administrator] . . . .").

Because the policy conferred upon MetLife the responsibility to accept or deny claims, this court reviews MetLife's decision under an abuse of discretion standard and defers to its decision, if reasonable.  The United States Court of Appeals for the Fourth Circuit has provided a list of eight

non-exhaustive factors to consider when making this
determination:

> (1) the language of the plan; (2) the
> purposes and goals of the plan; (3) the
> adequacy of the materials considered to make
> the decision and the degree to which they
> support it; (4) whether the fiduciary's
> interpretation was consistent with other
> provisions in the plan and with earlier
> interpretations of the plan; (5) whether the
> decision-making process was reasoned and
> principled; (6) whether the decision was
> consistent with the procedural and
> substantive requirements of ERISA; (7) any
> external standard relevant to the exercise
> of discretion; and (8) the fiduciary's
> motives and any conflict of interest it may
> have.

Rider v. Reliance Standard Life Ins. Co., No. 5:15-cv-06102,

2016 WL 3676728, at *5 (S.D.W. Va. July 6, 2016) (quoting

DuPerry, 632 F.3d at 869).

Considering these factors, MetLife reasonably determined

that coverage had lapsed.  The policy provides that coverage

ends when an employee ceases to be Actively at Work, which the

policy defines as performing the employee's usual duties for at

least thirty hours per week.  The policy allows for an extension

of benefits for up to six months while an employee is injured or

on any other form of leave.  The policy unambiguously states

that after that six-month extension, coverage terminates.

MetLife was responsible for reviewing insurance claims and

reasonably interpreted the agreement in finding that coverage

lapsed.  MetLife owed no deference to Cleveland-Cliffs's opinion that New's claim should be approved.

**2.**

New argues that the section of the policy that allows for the six-month continuance of coverage is ambiguous and that a genuine issue of material fact therefore exists as to whether coverage lapsed.

As stated above, that section allows for a continuance of coverage for up to six months for an injury or any other approved leave of absence.  The section also says that "general practice for employees in a job class determines which employees with the above types of absences are to be considered as still insured and for how long among persons in like situations." Ins. Pol'y, ECF No. 23-1 at 46.

New argues that this section is ambiguous because it says coverage can be extended for up to six months, but also that the employers "general practice" dictates which employees are covered and for how long.

This provision is unambiguous.  The policy explicitly states that coverage can be extended for "up to" six months. Thus, when giving effect to all words of the text, the plain meaning of this section is that Cleveland-Cliff's ordinary practices dictated which employees were still insured for <u>up to</u> six months.  Adopting New's argument requires the court to

13

ignore this provision, which would violate "the established
principle of contract interpretation that 'courts do not
interpret contracts in a manner that would render provisions
superfluous or as having no effect.'"  <u>Metropolitan Dev. Grp. at
Cool Spring, LLC v. Cool Spring Road, LLC</u>,  No. 22-1403, 2023 WL
8665999, *2 (4th Cir. Dec. 15, 2023) (quoting <u>Towson University
v. Conte</u>, 862 A.2d 941, 948 (Md. 2004)).

**3.**

Finally, New argues that, under West Virginia Code § 23-5A-
2 (1982), Cleveland-Cliffs was prohibited from terminating Troy
New's life insurance coverage while he collected workers'
compensation benefits.  <u>See</u> Pl.'s Mem. Supp. Mot. Summ. J., ECF
No. 32 at 9.

West Virginia Code § 23-5A-2 prohibits employers from
cancelling medical insurance while an employee collects workers'
compensation benefits for a temporary disability:

> Any employer who has provided any type of
> medical insurance for an employee or his
> dependents by paying premiums, in whole or
> in part, on an individual or group policy
> shall not cancel, decrease his participation
> on behalf of the employee or his dependents,
> or cause coverage provided to be decreased
> during the entire period for which that
> employee during the continuance of the
> employer-employee relationship is claiming
> or is receiving benefits under this chapter
> for a temporary disability. If the medical
> insurance policy requires a contribution by
> the employee, that employee must continue to
> make the contribution required, to the

14

> extent the insurance contract does not
> provide for a waiver of the premium.
>
> Nothing in this section shall prevent an
> employer from changing insurance carriers or
> cancelling or reducing medical coverage if
> the temporarily disabled employee and his
> dependents are treated with respect to
> insurance in the same manner as other
> similarly classified employees and their
> dependents who are also covered by the
> medical insurance policy.
>
> This section provides a private remedy for
> the employee which shall be enforceable in
> an action by the employee in a circuit court
> having jurisdiction over the employer.

Because this statute applies to health insurance and this case

involves a life insurance policy, this argument fails.

**B.**

The court turns next to New's claim that he is entitled to

life insurance benefits because MetLife was required to send

written notice of Troy New's right to convert the group policy

into an individual policy.

MetLife argues that this claim should be brought as a

breach of fiduciary duty claim under Section 1132(a)(3)(B) of

ERISA, rather than a claim for benefits under Section

1132(a)(1)(B). The court agrees; "[T]his issue would relate to

whether there was a breach of fiduciary duty . . . under ERISA,

not whether the Plaintiff was wrongfully denied a benefit under

an ERISA plan." Rider, No. 5:15-cv-06102, 2016 WL 3676728, at

*6 n.5.

15

As discussed above, "a party is a fiduciary only as to the activities which bring the person within the definition." Sloan v. Life Ins. Co. of N.A., No.: BPG-18-3055, 2019 WL 4750421, at *3 (D. Md. Sept. 30, 2019) (quoting Coleman, 969 F.2d at 61). Thus, the "court must ask whether a person is a fiduciary with respect to the particular activity at issue." Id. "The discretionary authority or responsibility which is pivotal to the statutory definition of 'fiduciary' is allocated by the plan documents themselves." Id. The plan-administrator employer and the insurance company may jointly share certain fiduciary obligations, depending on the terms of the insurance policy. See id.

In this case, the policy does not specify whether MetLife or Cleveland-Cliffs may provide written notice of the right to convert the group coverage. See ECF No. 21-1 at 52. Therefore, assuming for the sake of argument that the policy imposes a fiduciary duty to provide such notice, both MetLife and Cleveland-Cliffs appear to have assumed it.

However, New offers no evidence showing that MetLife had notice that Troy New's employment ended under the terms of the policy, as Cleveland-Cliffs incorrectly believed he could not lose coverage while receiving workers' compensation benefits and continued to pay premiums on his behalf. See Admin. Rec. (Email correspondence between Cleveland-Cliffs and MetLife), ECF No.

16

13-1 at 71-72.  Therefore, based on the evidence before the court, MetLife had no knowledge that Troy New's coverage ended under the plain terms of the policy, which is the triggering event for any potential notice requirement.  See Ins. Pol'y, ECF No. 23-1 at 52.

Accordingly, there is no genuine issue of material fact as to whether MetLife breached its alleged fiduciary duty to provide written notice of Troy New's right to convert the policy.  Without MetLife having notice of Troy New's leave of absence, any such claim would lie against Cleveland-Cliffs for misinterpreting the policy and proceeding as if he maintained coverage.  See Dawson-Murdock v. Nat'l Couns. Grp., Inc., 931 F.3d 269, 278 (4th Cir. 2019) (Finding plausible breach of fiduciary duty claim against plan-administrator employer for failing to inform or misinforming employee about his continued eligibility for benefits under plan).

New may file within fourteen days a motion to amend his complaint if he wishes to assert a claim against Cleveland-Cliffs.  However, the court expresses no opinion as to whether that motion would be successful.

## IV.  Conclusion

For the above reasons, the court orders as follows:

(1)  Plaintiff's motion for summary judgment (ECF No. 31) is
     **DENIED;**

17

(2)  Defendant's motion for summary judgment (ECF No. 33) is

  **GRANTED**;

(3)  Plaintiff's motion to conduct discovery (ECF No. 28) is

  **DENIED** as moot;

(4)  Defendant's motion to dismiss (ECF No. 23) is **DENIED** as

  moot;

(5)  Defendant is **DISMISSED** from this action; and

(6)  Plaintiff has **FOURTEEN DAYS** to file a motion to amend his

  complaint.

The Clerk is directed to send a copy of this Memorandum

Opinion and Order to counsel of record.

  **IT IS SO ORDERED** this 7th day of August, 2025.

ENTER:

David A. Faber
Senior United States District Judge